Vickie L. Driver
State Bar No. 24026886
Christina W. Stephenson
State Bar No. 24049535
Christopher M. Staine
State Bar No. 24104576
**CROWE & DUNLEVY, P.C.**
2525 McKinnon St., Suite 425
Dallas, TX 75201
Telephone: 214.420.2163
Facsimile: 214.736.1762
Email: vickie.driver@crowedunlevy.com
Email: christina.stephenson@crowedunlevy.com
Email: christopher.staine@crowedunlevy.com

**COUNSEL FOR THE DEBTORS**

## UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| | § | |
| In re: | § | Chapter 11 |
| | § | |
| **THE LASALLE GROUP, INC., et al.,** 1 | § | Case No. 19-31484-sgj-11 |
| | § | |
| **DEBTORS.** | § | (Jointly Administered) |
| | § | |
| | § | |
| | § | |

## JOINT PLAN OF LIQUIDATION OF
## CINCO RANCH MEMORY CARE, LLC AND PEARLAND MEMORY CARE, LLC

Cinco Ranch Memory Care, LLC ("Cinco Ranch") and Pearland Memory Care, LLC ("Pearland") (the "Debtors")2 propose the following Plan of Liquidation (the "Plan").

## ARTICLE I
## SUMMARY OF THE PLAN

1.1 <u>Overview of the Plan</u>. The Plan provides for a liquidation of all liabilities owed by the Debtors, as described herein. The Liquidated Debtors, as provided herein, shall be the surviving entity to the Debtors.

---

1 A list of the Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, is attached hereto as **Schedule 1**.

2 The Plan is proposed by Cinco Ranch and Pearland only and is not proposed by nor does it impact the remaining debtors jointly administered for procedural purposes only herein.

1.2     Payments to Creditors.  The Plan provides for Creditors to be paid as provided in Article V herein.  All Creditors of the Debtors will be treated in accordance with the priority scheme established by the Bankruptcy Code.

## ARTICLE II
## DEFINITIONS

As used in this Plan, the following terms shall have their respective meanings as set forth below and, unless the context otherwise requires, shall be equally applicable to the singular and plural forms of the terms defined.  Unless otherwise defined herein, the terms used in this Plan shall have the same meaning ascribed thereto in the Bankruptcy Code and the Bankruptcy Rules.

2.1     Administrative Claim:  Any Claim for payment of any cost or expense of administration of the Chapter 11 Cases entitled to priority in accordance with §§ 503(b) and 507(a)(1) of the Bankruptcy Code, including, without limitation, any actual and necessary expenses of preserving the Debtors' Estates and operating the Debtors' business from and after the Petition Date to and including the Confirmation Date (other than such Claims or portions thereof which, by their express terms, are not due or payable by the Distribution Date) and all allowances of compensation and reimbursement approved by the Court in accordance with the Bankruptcy Code and any fees or charges assessed against the Debtors' Estates under Chapter 11 of Title 28, United States Code.

2.2     Allowed Claim or Allowed Interest:  Any Claim (a) based on an application of a Professional Person to the extent such application is approved by Final Order; (b) allowed under this Plan; or (c) proof of which was timely and properly filed, deemed filed under applicable law or by reason of an Order of the Court or, if no proof of claim was filed or Order entered, which has been or hereafter is listed by the Debtors in their schedules filed under § 521(1) of the Bankruptcy Code as liquidated in amount and not disputed or contingent, provided that a timely filed proof of claim shall supersede any scheduling of such claim, and, in either case, a claim as to which such other applicable period of limitation fixed by the Bankruptcy Code or by an Order of the Court to which (i) no objection has been filed, or, (ii) in the event that an objection has been filed, any objection has been withdrawn pursuant to the provisions of this Plan or has been overruled by a Final Order of the Court.

2.3     Allowed Priority Claim:  All or that portion of any Priority Claim which is or has become an Allowed Claim

2.4     Bankruptcy Code:  The Bankruptcy Reform Act of 1978 as amended, and as applicable to these Chapter 11 cases, § 101 *et seq.* Title 11, United States Code.

2.5     Bankruptcy Rules:  The rules of procedure applicable to cases or proceedings pending before the Court, now existing or as hereafter amended.

2.6     Bar Date:        September 9, 2019, the date set forth in the Debtors' Notices of Chapter 11 Bankruptcy Case, Meeting of Creditors, & Deadline and by which all proofs of claim

for all creditors (except for governmental units) must be filed, or be barred pursuant to Federal Rule of Bankruptcy Procedure 3003.

2.7 <u>Business Day</u>: Any day on which banks are open to carry on their ordinary commercial banking business in Dallas, Texas.

2.8 <u>Cash</u>: Cash, cash equivalents and other readily marketable securities or instruments, including, without limitation, direct obligations of the United States of America, certificates of deposits issued by banks and commercial paper of any entity, including interest earned or accrued thereon, but specifically excluding any collateral consisting of funds in deposit or escrow accounts securing a Secured Claim.

2.9 <u>Causes of Action</u>: All accounts, contract rights, general intangibles and all rights, claims and causes of action of any kind, whether legal or equitable, of the Debtors, for affirmative recovery of Cash or other property of the Estates, other than accounts receivable (whether such Causes are the subject of presently pending lawsuits, adversary proceedings or appeals or otherwise) existing before the Effective Date, including such that have accrued or may thereafter accrue relating to those matters that have occurred on or prior to the Effective Date.

2.10 <u>Chapter 11 Cases</u>: The Chapter 11 bankruptcy cases of Cinco Ranch Memory Care, LLC, Case Number 19-31486, Northern District of Texas, Dallas Division, filed May 2, 2019, and Pearland Memory Care, LLC, Case Number 19-31488, Northern District of Texas, Dallas Division, filed May 2, 2019.

2.11 <u>Claim</u>: Any right against the Debtors to (a) payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured or (b) an equitable remedy for a breach of performance if the breach would give rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

2.12 <u>Collateral</u>: Property in which the Debtors have an interest that secures, in whole or in part, payment of an Allowed Secured Claim.

2.13 <u>Confirmation</u>: Confirmation means the entry of an Order of the Bankruptcy Court confirming this Plan.

2.14 <u>Confirmation Date</u>: The date of entry of the Confirmation Order in accordance with the provisions of the Bankruptcy Code, provided, however, that if the Confirmation Order or consummation of the Plan is stayed pending appeal, then the Confirmation Date shall be the date of entry of the Final Order vacating such stay or the date on which such stay expires or is no longer in effect.

2.15 <u>Confirmation Hearing</u>: The date set by the Court to consider confirmation of the Plan pursuant to § 1129 of the Bankruptcy Code.

2.16    Confirmation Order:  Order of the Court confirming the Plan and approving the transactions contemplated herein.

2.17    Contingent Claim:    Any Claim listed in the Debtors' schedules that is listed as "contingent."

2.18    Court:  The United States Bankruptcy Court for the Northern District of Texas or such other Court as may have jurisdiction of the Chapter 11 Cases.

2.19    Creditor:  Any entity that is the Holder of a Claim or an interest, including but not limited to: (a) a Claim that arose on or before the Petition Date, (b) an interest that arose on or before the Petition Date, (c) a Claim against the Debtors' Estate of any kind specified in § 502(g), § 502(h), or § 502(i) of the Bankruptcy Code or (d) an Administrative Claim.

2.20    Debtors:  Cinco Ranch Memory Care, LLC and Pearland Memory Care, LLC.

2.21    DIP Lenders:  shall mean SH1 Houston LLC, a Delaware limited liability company, successor in interest to Veritex Community Bank, in its capacity as lender under the DIP Loan, pursuant to the Final DIP Order.

2.22    DIP Loan:  shall mean the post-petition secured superpriority loan(s) made by the DIP Lender to the Debtors and approved by the Court pursuant to the Final DIP Order.

2.23    Disclosure Statement:  The written Disclosure Statement filed and served with respect to this Plan, as approved by the Court pursuant to §1125 of the Bankruptcy Code.

2.24    Disputed Claim:  Any Claim or interest to which an objection has been interposed in accordance with the Bankruptcy Code, Bankruptcy Rules, this Plan or orders of the Court.

2.25    Distribution Date:  The date, occurring as soon as practicable after the Effective Date, upon which distributions are made pursuant to the terms of the Plan to Holders of Allowed Administrative Claims, and other Allowed Claims; provided, however, that should such Allowed Claims be paid in the ordinary course of business, the Distribution Date shall be the date such Allowed Claim becomes payable under the terms of any contract or agreement or applicable non-bankruptcy law.

2.26    Effective Date:  The date that is no later than thirty (30) days after the Confirmation Date, or earlier date, as determined in the sole discretion of the Debtors/Liquidating Debtors.

2.27    Estates:  The estates created in the Chapter 11 Cases for the Debtors by Bankruptcy Code § 541.

2.28    Equity Interest:  An interest in the ownership of the Debtors.

2.29    Fee Application:  An application of a Professional Person under §§ 328, 330, 331 or 503 of the Bankruptcy Code for allowance of compensation and reimbursement of expenses in the Chapter 11 Cases.

2.30    Final Distribution:  Final distribution under the Plan to be applied to the payment of the Allowed Claims.

2.31    Final DIP Order: shall mean the Final Order (1) Authorizing Pearland Memory Care LLC and Cinco Ranch Memory Care LLC Debtors to Obtain Post-Petition Financing; (2) Granting Liens and Superpriority Claims.

2.32    Final Order:  An order or a judgment which has not been reversed, stayed, modified or amended and as to which (i) the time to appeal or seek review, reargument or rehearing has expired and as to which no appeal or petition for certiorari, review or rehearing is pending or (ii) its appeal, review, reargument, rehearing or certiorari has been denied and a time to seek a further appeal, review, reargument, rehearing or certiorari has expired as a result of which such order shall have become final and nonappealable in accordance with applicable law.

2.33    Holder or Claimholder:  Any entity that is the holder of a Claim, including but not limited to (a) a Claim that arose on or before the Petition Date, (b) a Claim against the Debtors' Estates of any kind specified in § 502(g), § 502(h) or § 502(i) of the Bankruptcy Code or (c) an Administrative Claim.

2.34    Impaired:  When used with respect to any Claim, interest or class, "impaired" has the same meaning as that contained in § 1124 of the Bankruptcy Code.

2.35    Interest Holder:  Any person, or entity, holding an Equity Interest in the Debtors in the as of the Petition Date.

2.36    Liquidated Debtors:  The legal entities that shall survive the Debtors as of the Confirmation Date.

2.37    Order:  An order or judgment of the Bankruptcy Court as entered on the docket.

2.38    Petition Date:  May 2, 2019.

2.39    Plan:  The Plan proposed by the Debtors, either in its present form or as it may be amended or modified.

2.40    Priority Claims:    Allowed Claim entitled to a priority under, *inter alia*, Bankruptcy Code § 507(a).

2.41    Priority Tax Claim:  Any Claim that is entitled to priority in payment under § 507(a)(8) of the Bankruptcy Code.

2.42 <u>Pro Rata</u>: Means proportionately so that the ratio of the amount of consideration distributed on account of a particular Allowed Claim to the amount of the Allowed Claim is the same as the ratio of the amount of consideration distributed on account of all Allowed Claims of the class in which the particular Allowed Claim is included, to the amount of all Allowed Claims of that Class.

2.43 <u>Professional Person</u>: Any entity retained or to be compensated pursuant to §§ 326, 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code.

2.44 <u>Secured Claim</u>: A Claim of a Creditor arising on or before the Petition Date to the extent (a) secured by a lien on Collateral which is not void or avoidable under applicable state and federal law, including the Bankruptcy Code or (b) subject to set off under § 553 of the Bankruptcy Code, in each case to the extent of the value of said Creditor's interest in the Debtor's interests in the property or the amount of the set off, as applicable; provided, however, that nothing herein shall prohibit a Secured Creditor from making the election provided in § 1111 (b) (2) of the Bankruptcy Code.

2.45 <u>Secured Creditor</u>: Any Creditor that is the Holder of a Secured Claim.

2.46 <u>Undetermined Claim</u>: A Claim that is (a) a Disputed Claim; (b) a Claim arising through rejection of executory contracts or unexpired leases pursuant to this Plan; (c) an undetermined Administrative Claim in respect of an application of a Professional Person; or (d) a claim that is unliquidated or contingent.

2.47 <u>Unliquidated Claim</u>: Any Claim that is listed in the Debtors' schedules as "unliquidated."

2.48 <u>Unsecured Claim</u>: Any claim against the Debtors whatsoever, other than 1) a Secured Claim, or 2) a Claim that is entitled to priority pursuant to the Bankruptcy Code.

## ARTICLE III
## DESIGNATION OF CLASSES OF CLAIMS

3.1.A <u>Designation of Classes of Claims of Cinco Ranch</u>: The following is a designation of the Classes of Claims against Cinco Ranch under this Plan. A Claim is classified in a particular Class only to the extent that the Claim qualifies within the description of that Class and is classified in a different Class to the extent that any remainder of the Claim qualifies within the description of such different Class. A Claim is in a particular Class only to the extent that the Claim is an Allowed Claim in that Class and has not been paid, released or otherwise satisfied before the Effective Date.

Allowed Administrative Claims (Unimpaired)

Allowed Priority Tax Claims (Unimpaired)

Class 1.1.A: Secured Claim of SH1 Houston LLC ("SH1") (impaired)

Class 1.2.A:   Secured Claims of Taxing Authorities (impaired)

Class 2.1.A:   Administrative Convenience Class (impaired)

Class 2.2.A:   General Unsecured Claims (impaired)

Class 2.3.A:   Unsecured Deficiency Claims (impaired)

Class 2.4.A:   Unsecured Intercompany Claims (impaired)

Class 3.A:   Equity Interest Holders (impaired)

3.1.B  <u>Designation of Classes of Claims of Pearland</u>:  The following is a designation of the Classes of Claims against Pearland under this Plan. A Claim is classified in a particular Class only to the extent that the Claim qualifies within the description of that Class and is classified in a different Class to the extent that any remainder of the Claim qualifies within the description of such different Class. A Claim is in a particular Class only to the extent that the Claim is an Allowed Claim in that Class and has not been paid, released or otherwise satisfied before the Effective Date.

Allowed Administrative Claims (Unimpaired)

Allowed Priority Tax Claims (Unimpaired)

Class 1.1.B:   Secured Claim of SH1 Houston LLC ("SH1") (impaired)

Class 1.2.B:   Secured Claims of Taxing Authorities (impaired)

Class 2.1.B:   Administrative Convenience Class (impaired)

Class 2.2.B:   General Unsecured Claims (impaired)

Class 2.3.B:   Unsecured Deficiency Claims (impaired)

Class 2.4.B:   Unsecured Intercompany Claims (impaired)

Class 3.B:   Equity Interest Holders (impaired)

**ARTICLE IV**
**PAYMENT OF ADMINISTRATIVE CLAIMS**
**AND EXPENSES AND CERTAIN PRIORITY CLAIMS**
**(Each individually, Cinco Ranch and Pearland)**

**Allowed Administrative Claims.**

The DIP Loan is deemed Allowed as an Administrative Expense Claim in the aggregate amount of $400,000.00 plus all interest and fees accrued thereunder (the "DIP Administrative Claim"). The DIP Lender shall receive, on account of the DIP Administrative Claim, payment in Cash of all Distributions under the Plan until payment in full of the DIP Administrative Claim. On or before the Effective Date, the Debtors shall pay all amounts owing to the Professionals for all outstanding Professional Claims that have been awarded by the Court but which were unpaid as of the Effective Date. On or prior to the Administrative Expense Claim Bar Date, each Professional required to do so shall File with the Court a final fee application seeking final approval of all fees and expenses from the Petition Date through the Effective Date. Objections to applications of Professional final fee applications must be filed and served on the Plan Administrator and the professionals to whose application the objections are addressed no later than twenty-four (24) days after filing of the relevant final fee application. The Liquidating Debtors shall pay any outstanding amounts owed to a Professional within ten (10) days after entry of a Final Order with respect to such Professional's final fee application.

Each holder of an Allowed Administrative Expense Claim other than the DIP Administrative Claim and Professional Claims, including any Post-Petition Tax Claim, shall receive 100% of the unpaid Allowed amount of such Administrative Expense Claim in Cash in the ordinary course of business or as soon as reasonably practicable after the later of (a) the Effective Date, (b) payment in full of the DIP Administrative Claim, (c) the date on which such Administrative Expense Claim becomes Allowed, or (d) such date as is mutually agreed upon by the applicable Debtor or and the Holder of such Allowed Administrative Expense Claim. To the extent that the holder of a Post-Petition Tax Claim holds a lien to secure its Claim under applicable state law, the holder of such Claim shall retain its lien until its Allowed Claim has been paid in full.

Holders of Administrative Expense Claims (including, without limitation, holders of Professional Claims or Post-Petition Tax Claims) that are required to File a request for payment of such Claims and that do not File such requests by the applicable Administrative Expense Claim Bar Date or Post-Petition Tax Claim Bar Date are forever barred from asserting such Claims against the Debtors, the Liquidating Debtors, or any of their respective property.

Allowed Administrative Expense Claims and Allowed Professional Claims, but excluding the DIP Administrative Claim, shall be paid from the proceeds of the DIP Loan and Cash Collateral. Notwithstanding any other provision of the Plan, all fees, expenses, and other compensation arising after the Effective Date and due and payable to professionals retained by the Liquidating Trustee shall be paid by the Liquidating Trustee from the Liquidating Trust.

**Priority Tax Claims.**

Each holder of an Allowed Priority Tax Claim shall receive, after payment in full of the DIP Administrative Claim, on account of such Allowed Priority Tax Claim, payment in Cash of such holder's Pro-Rata share of all Distributions under the Plan (excluding any Distributions of

the Liquidating Trust) to be shared Pro-Rata with holders of all Allowed Priority Tax Claims until the payment in full of all Allowed Priority Tax Claims.

To the extent interest is required to be paid on any Allowed Priority Tax Claim, the rate of such interest shall be the rate determined under applicable non-bankruptcy law. Provided, however, that any Claim or demand for payment of a penalty (other than a penalty of the type specified in section 507(a)(8)(G)of the Bankruptcy Code) shall be disallowed pursuant to the Plan, and the Holder of an Allowed Priority Tax Claim shall not be allowed to assess or attempt to collect such penalty from the Debtors, the Liquidating Debtors or their Estates, or their respective property.

## ARTICLE V
## TREATMENT OF CLASSES OF CLAIMS AND INTERESTS

**Cinco Ranch**

5.1    Secured Claims of SH1:

(Class 1.1.A) - The Class 1.1.A of SH1 shall be treated as a fully Secured Claim against Cinco Ranch in the amount of **$8,310,598.33**.  In full and complete settlement, release and discharge of and in exchange for such Class 1.1.A Claim: (i) on the Effective Date and as part of the Closing, SH1 shall receive from the Purchaser the proceeds of the Sale of the Cinco Ranch Facility (as defined below). SH1 shall also be permitted to participate in the Sale as a Qualified Bidder and credit bid up to the full amount of its allowed fully Secured Claim. To the extent that the amounts received as provided herein are less than the amount of the Class 1.1.A Claim, SH1 shall be a holder of a Class 2.2.A Unsecured Deficiency Claim (the "SH1 Unsecured Deficiency Claim") with respect to such deficiency.  To the extent that the amounts received as provided herein are greater than the amount of the Class 1.1.A Claim, such excess amount shall be retained by the Debtor for distribution to other creditors.

The Class 1.1.A Claim is impaired under the Plan.

(Class 1.1.B) - The Class 1.1.B of SH1 shall be treated as a fully Secured Claim against Pearland in the amount of **$6,354,320.43**.  In full and complete settlement, release and discharge of and in exchange for such Class 1.1.B Claim: (i) on the Effective Date and as part of the Closing, SH1 shall receive from the Purchaser the proceeds of the Sale of the Pearland Facility (as defined below). SH1 shall also be permitted to participate in the Sale as a Qualified Bidder and credit bid up to the full amount of its allowed fully Secured Claim. To the extent that the amounts received as provided herein are less than the amount of the Class 1.1.B Claim, SH1 shall be a holder of a Class 2.2.B Unsecured Deficiency Claim (the "SH1 Unsecured Deficiency Claim") with respect to such deficiency.  To the extent that the amounts received as provided herein are greater than the amount of the Class 1.1.B Claim, such excess amount shall be retained by the Debtor for distribution to other creditors.

The Class 1.1.B Claim is impaired under the Plan.

5.2.    <u>Secured Claims of Taxing Authorities</u>: (Class 1.2.A and 1.2.B) – The Class 1.2.A and 1.2.B Claims shall consist of the Secured Claims filed by Cypress- Fairbanks ISD, Montgomery County, Fort Bend County (the "Taxing Authorities") filed against Cinco Ranch and Pearland.  The Class 1.2.A and 1.2.B Claims shall be treated as fully secured.  The Class 1.2.A and 1.2.B Claims shall be paid in fifteen (15) quarterly payments (the "Tax Payments") commencing no later than the first day of the first month which is thirty (30) days after entry of the Confirmation Order.  The Tax Payments shall be calculated to result in payment in full of the tax claims with all applicable and accrued interest no later than the fifth anniversary of the Petition Date.  The Tax Payments shall include interest from the Effective Date through the date of payment in full at the applicable state statutory rate of 1% per month (beginning on the Effective Date) pursuant to 11 U.S.C. §§ 506(b), 511, and 1129.  Further, notwithstanding anything contained herein to the contrary, the Taxing Authorities shall hereby retain the liens they currently hold pursuant to Texas Property Tax Code §§32.01 *et. seq.* on the Debtor's property and such liens shall remain in full force and effect until all taxes, penalties or interest secured thereby have been paid in full.  For the avoidance of any doubt, any sale of any of the Debtor's Assets on which the Taxing Authorities have liens shall not be free and clear of the liens of the Taxing Authorities.  In the event of a default under the plan, the Taxing Authorities shall send notice of default to counsel for the Debtor/Liquidated Debtor via facsimile or electronic mail, and the Liquidated Debtor shall have 15 days from the date of such notice to cure said default.  In the event of failure to cure the default timely, the Taxing Authorities shall be entitled to pursue collection of all amounts owed pursuant to applicable non-bankruptcy law without further recourse to the Bankruptcy Court.  The Taxing Authorities shall be required to send two notices of default; upon a third event of default, they may proceed to collect all amounts owed pursuant to applicable non-bankruptcy law without further notice.

The Class 1.2.A and 1.2.B Secured Claims of Taxing Authorities are impaired under the Plan.

5.3.    <u>Administrative Convenience Claims</u>:  (Class 2.1.A and Class 2.1.B) – Class 2.1.A and 2.1.B Administrative Convenience Claims each consist of Allowed Unsecured Claims against the respective Debtor, each under the amount of $1500, held by creditors who are not insiders or affiliates of the Debtors. Creditors holding Allowed Class 2.1 Claims will be paid 50% of their Allowed Claims on the Effective Date.    A holder of a Class 2.2 or 2.3 Allowed Claim who wishes to reduce their claim to the amount of $1500 can opt in to be paid in the convenience class.

The Class 2.1.A and 2.1.B General Unsecured Claims are impaired under the Plan.

5.4.    <u>General Unsecured Claims</u>:  (Class 2.2.A and Class 2.2.B) – Class 2.2.A and 2.2.B General Unsecured Claims each consist of all other Allowed Unsecured Claims against the respective Debtor not placed in any other Class, not held by insiders or affiliates of the Debtors. Creditors holding Allowed Class 2.2 Claims, along with Holders of Allowed Class 2.3 Claims, will share pro rata in any assets remaining after payment of Claims in Classes 1.1, 1.2, and 2.1. Such payments will be made as soon as reasonably practicable after all the Claims in the foregoing Classes are paid in full.

The Class 2.2.A and 2.2.B General Unsecured Claims are impaired under the Plan.

5.5.    Unsecured Deficiency Claims: (Class 2.3.A and 2.3.B) – Class 2.3.A and 2.3.B Unsecured Deficiency Claims consist of the SH1 Unsecured Deficiency Claims. Creditors holding Allowed Class 2.3 Claims, along with Holders of Allowed Class 2.2, will share pro rata in any assets remaining after payment of Claims in Classes 1.1, 1.2, and 2.1. Such payments will be made as soon as reasonably practicable after all the Claims in the foregoing Classes are paid in full.

The Class 2.3.A and 2.3B Unsecured Deficiency Claims are impaired under the Plan.

5.6.    Unsecured Intercompany Claims: (Class 2.4.A and 2.4.B) – Class 2.4.A and 2.4.B Unsecured Intercompany Claims consist of the Unsecured Claims of Insiders or Affiliates of the Debtors. Creditors holding Allowed Class 2.4 Claims will receive no distributions under this Plan.

The Class 2.4.A and 2.4.B Unsecured Deficiency Claims are impaired under the Plan.

5.7.    Equity Interest Holders:    (Class 3.A and 3.B) – The Class 3.A and 3.B Equity Interest Holders consist of the equity interests held by the members of each of the Debtors. The Class 3 Equity Interest Holders' equity interests in the Debtors equaling the total amount of such interests in each of the Debtors as of the Petition Date shall be extinguished as of the Effective Date. Class 3 Equity Interest Holders will not receive any distributions under the Plan.

The Class 3.A and 3.B Equity Interest Holders are impaired under the Plan.

5.8    Payments to the United States Trustee:  The Liquidated Debtors shall pay all quarterly fees of the United States Trustee until the Chapter 11 Cases are closed.

## ARTICLE VI
## MEANS OF IMPLEMENTING THE PLAN

6.1    Sale of the Debtors' Business.  The Plan contemplates the sale of substantially all of the Debtors' assets (the "Assets") to a third party (the "Sale").  A form Sale Agreement is attached hereto as **Exhibit A**.  The highest and best offer, as determined in the Debtors' sole discretion and reasonable business judgment, shall be identified by 5:00 p.m., Prevailing Central Time on the ("Auction Cut Off Date") as determined by the Court.  The Debtors will seek authority, in connection with Confirmation of the Plan, to sell the Assets to the bidder submitting the highest and best offer, free and clear of any liens, claims, encumbrances, or other interests, except as otherwise provided herein.  The Confirmation Order shall contain specific authority for the sale of the Debtors' assets free and clear of any liens, claims, encumbrances or other interests, except as otherwise provided herein.

Contemporaneously with the Closing and the Effective Date, the Purchaser shall transfer to the Debtor the proceeds of the Sale to be used to satisfy Administrative and Priority claims, including the DIP Administrative Claim, followed by the Class 1.1 SH1 claim, with remaining funds to be distributed as set forth in the claim treatment plan. Any other assets of the Debtors not transferred to the Purchaser at Closing, including all Avoidance Actions, shall vest in the Liquidating Trust for the benefit of holders of Allowed Claims against the Debtor's estate.

6.2     <u>Liquidating Trust</u>. Upon the Effective Date, a Liquidating Trustee shall be appointed. The Debtors shall file a Notice of Liquidating Trustee with the Court, identifying that the Liquidating Trustee, on or before seven (7) days prior to the Confirmation Hearing. Through the Plan and Confirmation Order, the Liquidating Trustee will be charged with bringing, administering, and settling Causes of Action in the best interest of the Creditors and the Estates. The Liquidating Trustee shall have the authority to settle matters below $25,000.00 without Court approval. The Liquidating Trustee shall be charged with liquidating the Liquidated Debtors' remaining assets after the Sale described above, and the proceeds thereof shall first pay all operating costs and expenses, including the attorneys' fees and expenses of the Liquidating Trustee's professionals, subject to the fee application process under section 330 of the Bankruptcy Code, as employed by the Liquidating Trustee and approved by the Liquidated Debtors' management, then to satisfy all of the Liquidated Debtors' Allowed Claims as provided in this Plan. The Liquidating Trustee shall be paid as a chapter 7 trustee pursuant to section 326 of the Bankruptcy Code.

After the Effective Date, the Plan and all remaining property of the Estates shall be managed under the direction of the Liquidating Trustee as provided by the terms of the Plan. In the performance of his or her duties hereunder, the Liquidating Trustee shall have the rights and powers of a debtor in possession under Section 1107 of the Bankruptcy Code, and such other rights, powers, and duties incident to causing performance of the obligations under the Plan or otherwise as may be reasonably necessary, including, without limitation, the filing of any necessary tax returns.

From and after the Effective Date, the Liquidating Trustee may, among other things, use, pledge, acquire, and/or dispose of any Estates' property free of the restrictions imposed under the Bankruptcy Code and without prior Court approval, provided that it is entirely in conformance with this Plan, and that the Court retains jurisdiction over the Liquidating Trustee this Plan.

The Confirmation Order shall provide the Liquidating Trustee with express authority to convey, transfer, and assign any and all property of the Estates consistent with the terms of the Plan and to take all actions necessary to effectuate same. The Liquidating Trustee shall have sole responsibility for making Distributions under the Plan and pursuing Causes of Action (including Chapter 5 Causes of Action) on behalf of the Debtors and their Estates. The Liquidating Trustee shall also have standing to monitor and seek to enforce the performance of obligations under the Plan and the performance of other provisions of the Plan.

As soon as is practicable after the Effective Date, the Liquidating Trustee shall file an application with the Clerk of the Court requesting the entry of a Final Decree closing the Cases; *provided, however*, the Liquidating Trustee shall not file an application for Final Decree until and unless the conditions to the Plan becoming effective as set forth herein have been fully met, all pending Causes of Action have been resolved by Final Order of a court of competent jurisdiction or abandoned, and objections to Disputed Claims have been resolved by Final Order of the Court.

6.3     Continued Corporate Existence.   The Liquidated Debtors shall continue to exist after the Effective Date in accordance with the applicable laws of the State of Delaware, in which they are incorporated, for the purposes of satisfying their obligations under the Plan and the winding down of their affairs.  On the Effective Date or any time thereafter, the Liquidated Debtors may take such action as permitted by applicable law, including, but not limited to, the dissolution of the Liquidated Debtors and the closure of the Liquidated Debtors' Chapter 11 Cases.

6.4     Documents:  All necessary documents for the implementation of this Plan shall be executed by all necessary parties in interest on the Effective Date, unless an earlier date is provided for a particular document or documents under this Plan.  To the extent that the parties in interest herein are unable to agree on the form or substance of such documents, such unresolved issues shall be submitted to the Court for determination.  Upon the Effective Date, or as soon as practicable thereafter the Court shall have resolved said issues, and all such documents shall be binding on the Debtors, the Creditors, and all other parties hereto.

6.5     Rights Under 1129(b):  If any impaired class votes to accept the Plan, but not all classes accept the Plan, the Debtors will seek confirmation under the cram down provisions of § 1129(b) of the Bankruptcy Code and hereby gives notice of intent to invoke the cram down provisions of § 1129(b) in that event.

6.6     Bidding Procedures:  Set forth below are the bidding procedures (the "Bidding Procedures") to be employed by the Debtors in connection with the sale of substantially all of its assets:

Property to be Sold: The Debtors shall offer for sale the facilities and operations located at 24024 Westheimer Parkway, Katy, TX 77494 (the "Cinco Ranch Facility") and 11200 Discovery Bay Drive, Pearland, TX 77584 (the "Pearland Facility") (collectively, the "Properties").

Participation Requirements:   Any potential bidder that wishes to bid on the Debtors' Properties must be able, as solely determined by the Debtors, to consummate the sale of the Properties as contemplated by the Sale Agreements and the submitted bids.

Bid Requirements: To be deemed a qualifying bid, a bid must be in writing and received by a date no later than the Auction Cut Off Date along with proof of the bidder's ability to consummate the Sale.  Whether a bidder is able to consummate the Sale shall be determined in the sole discretion of the Debtors.

The bid shall: (a) state that such bidder offers to purchase the Property upon the terms and conditions set forth in the Sale Agreement or pursuant to an alternative structure or terms that the Debtors determine is no less favorable to the Debtors' estates than the terms and conditions of the Sale Agreement; (b) identify the cash consideration to be paid for the Property – credit bidding will only be

considered from SH1; (c) state that such bidder is prepared to enter into a legally binding purchase and sale agreement or similar agreement for the acquisition of the Property on terms and conditions no less favorable to the Debtors' estates than the terms and conditions contained in the Sale Agreement (as determined by the Debtors in their sole discretion and reasonable business judgment); (d) state that such bidder is financially capable of consummating the transactions contemplated by the Sale Agreement and provides written evidence in support thereof; (e) state that such bidder's offer is irrevocable until the closing of the Sale if such bidder is the prevailing bidder; (f) contain such financial and other information to allow the Debtors to make a reasonable determination as to the bidder's financial and other capabilities to consummate the Sale; and (g) not request or entitle such bidder to any break-up fee, expense reimbursement or similar type of payment.

All bids must be sent to the Debtors' counsel at the address below by the Auction Cut Off Date to be considered:

Vickie L. Driver
Crissie Stephenson
Crowe & Dunlevy, P.C.
2525 McKinnon St., Suite 425
Dallas, Texas 75201
(214) 420 - 2163 Telephone
(214) 736 - 1762 Telecopier

## ARTICLE VII
## PROVISIONS FOR THE REJECTION OF
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

7.1     General Assumption of Executory Contracts:     All executory contracts and unexpired leases of the Debtors (including, but not limited to, those listed on the Debtor's Schedules) which are not expressly assumed on or before thirty (30) days after the Confirmation Date or not otherwise specifically treated in this Plan, via supplement hereto, or in the Confirmation Order shall be deemed to have been rejected on the Confirmation Date. Listing a contract or lease as an executory contract or unexpired lease will not constitute an admission by the Debtors, or the Debtors-in-Possession that such contract or lease is an executory contract or unexpired lease or that any Debtors, or the Debtors-in-Possession has any liability thereunder. The Confirmation Order shall constitute an Order of the Bankruptcy Court approving rejection under § 365 of the Bankruptcy Code as of the Effective Date.

7.2     Cure of Defaults:     Unless otherwise provided for in the Plan, the Liquidated Debtors shall cure all defaults existing under any assumed Executory Contract pursuant to the provisions of §§ 1123(a)(5)(G) and 365(b) of the Bankruptcy Code, by paying the amount, if any, claimed by any party to such Executory Contract as set forth in a proof of claim, which shall be filed with the Court within fifteen (15) days after the Confirmation Date and shall be titled "Assumption Cure Proof of Claim." Alternatively, the Liquidated Debtors may pay such amount as may be agreed upon between the Liquidated Debtor and any party to such Executory Contract,

provided an Assumption Cure Proof of Claim is timely filed within fifteen (15) days after the Confirmation Date. Payment of any amount claimed in an Assumption Cure Proof of Claim or otherwise agreed to shall be in full satisfaction, discharge and cure of all such defaults (including any other Claims filed by any such party as a result of such defaults), provided, however, that if the Liquidated Debtor files, within sixty (60) days of the filing of an Assumption Proof of Claim, an objection in writing to the amount set forth, the Court shall determine the amount actually due and owing with respect to the defaults or shall approve the settlement of any such Claims. Payment of such Claims shall be made by the Liquidated Debtors on the later of: (1) ten (10) Business Days after the expiration of the sixty day (60) period for filing an objection in respect of any Assumption Cure Proof of Claim filed pursuant to this section; or (ii) when a timely objection is filed, ten (10) Business Days after an order of the Court allowing such Claim becomes a Final Order.

7.3     <u>Claims for Damages</u>:  Any Claims based upon rejection of an executory contract or unexpired lease under the Plan must be filed with the Bankruptcy Court and served on the Liquidated Debtors such that they are actually received within thirty (30) days of the entry of an order rejecting such contract or lease. Objections to any such proof of claim shall be filed not later than thirty (30) days after receipt of such claim. The Court shall determine any such objections, unless they are otherwise resolved. All Allowed Claims for rejection damages shall be treated as Class 2.2 Claims.  Any Claim not filed within such time will be forever barred from assertion against the Debtors or their Estates.

7.4     <u>Reservation of Rights</u>:  The Debtors reserve the right to file applications for the assumption or rejection of any executory contract or unexpired lease at any time prior to ninety (90) days after the Confirmation Date.

7.5     <u>Proofs of Claims</u>:  Each entity that is a party to an executory contract or unexpired lease rejected at Confirmation, and only such entity, shall be entitled to file, not later than thirty (30) days after the Confirmation Date or such later date specified by the Bankruptcy Court in the Confirmation Order or in an Order approving such rejection, a proof of claim for damages alleged to have arisen from the rejection of the contract or lease to which such entity is a party.

**ARTICLE VIII**
**<u>MODIFICATION OF THE PLAN</u>**

8.1     <u>Amendments Prior to Confirmation Date</u>:  The Debtors may modify the Plan prior to Confirmation, and the Plan, as amended shall become the new Plan of Liquidation.

8.2     <u>Amendments After Confirmation Date</u>:  The Debtors may modify the Plan before its substantial consummation, provided that the Plan, as modified, meets the requirements of the Bankruptcy Code, and the Court, after notice and hearing, confirms this Plan, as modified.

8.3     <u>Effect on Claims</u>:  A Holder of a Claim that has accepted or rejected this Plan shall be deemed to have accepted or rejected, as the case may be, this Plan, as modified, unless, within the time fixed by the Court, such Holder changes its previous acceptance or rejection.

# ARTICLE IX
## RETENTION OF JURISDICTION

9.1 <u>Purposes</u>: Notwithstanding entry of the Confirmation Order, this Court shall retain jurisdiction over the Chapter 11 Cases for the following purposes:

   i.   to determine any and all objections to the allowance of Claims or Interests, both before and after the Confirmation Date, including any objections to the classification of any Claim or Interest;

   ii.  to determine any and all applications for fees and expenses authorized to be paid or reimbursed in accordance with section 503(b) of the Bankruptcy Code or this Plan;

   iii. to determine any and all pending applications for the assumption or rejection of executory contracts or for the rejection or assumption and assignment, as the case may be, of unexpired leases to which the Debtors are a party or with respect to which it may be liable; to hear and determine any actions to void or terminate unexpired contracts or leases; and to hear and determine and, if need be, to liquidate any and all claims arising therefrom;

   iv.  to hear and determine any and all actions initiated by the Liquidated Debtors, whether by motion, complaint or otherwise;

   v.   to determine any and all applications, motions, adversary proceedings and contested matters pending before the Court on the Confirmation Date or filed or instituted after the Confirmation Date;

   vi.  to modify this Plan, the Disclosure Statement or any document created in connection with this Plan or remedy any defect or omission or reconcile any inconsistency in any Order of the Court, this Plan, the Disclosure Statement or any document created in connection with this Plan, in such manner as may be necessary to carry out the purposes and effects of this Plan to the extent authorized by the Bankruptcy Code;

   vii. to ensure that the distribution is accomplished in accordance with the provisions of this Plan;

   viii. to allow, disallow, determine, liquidate or estimate any Claim or Interest and to enter or enforce any order requiring the filing of any such Claim or Interest before a particular date;

ix.    to enter such orders as may be necessary to interpret, enforce, administer, consummate, implement and effectuate the operative provisions of this Plan, the Confirmation Order and all documents and agreements provided for herein or therein or executed pursuant hereto or thereto including, without limitation, entering appropriate orders to protect the Debtors from creditor actions;

x.    to hear any other matter not inconsistent with Chapter 11 of the Bankruptcy Code;

xi.    to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked or vacated;

xii.    to determine such other matters as may arise in connection with this Plan, the Disclosure Statement or the Confirmation Order, including, without limitation, all such actions brought by the Liquidating Trustee in this Court;

xiii.    to enforce all orders, judgments, injunctions, and rulings entered in connection with the Cases;

xiv.    to determine all issues relating to the Claims of the IRS, and other taxing authorities, state or federal;

xv.    to determine any avoidance actions brought pursuant to the provisions of the Bankruptcy Code; and

xvi.    to enter a Final Order and final decree closing the Chapter 11 cases.

9.2    <u>Exclusive Jurisdiction</u>:  The Court shall have exclusive jurisdiction to resolve all controversies, suits and disputes that may arise in connection with the interpretation, enforcement, consummation, implementation or administration of this Plan, the Confirmation Order or the Disclosure Statement and all entities shall be enjoined from commencing any legal or equitable action or proceeding with respect to such matters in any other court or administrative or regulatory body.

9.3    <u>Abstention</u>:  If the Court abstains from exercising jurisdiction or is otherwise without jurisdiction over any matter arising out of the Chapter 11 Cases, including the matters set forth in this Article IX, this Article IX shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

## ARTICLE X
## <u>CAUSES OF ACTION</u>

10.1 <u>Retention of Causes of Action</u>: All Claims and Causes of Action owned by the Debtors, Causes of Action that could have been brought by a Creditor on behalf of the Debtors, and all Causes of Action created by the Bankruptcy Code not waived or released under the Plan shall be retained by the Liquidating Trust and may be pursued by the Liquidating Trustee for the benefit of the Creditors, with the proceeds to be paid pursuant to the terms of this Plan or to the extent all obligations under this Plan are satisfied, retained by the Liquidated Debtors. Such Claims and Causes of Action include, but are not limited to, Causes of Action arising in and under Chapter 5 of the Bankruptcy Code. The Liquidating Trustee shall have the exclusive right to settle or compromise all such Causes of Action. The Debtors expressly reserve, on behalf of the Liquidating Trustee, all rights and remedies with respect to potential preference or otherwise voidable transfers. The Debtors specifically reserve their rights regarding transfers described within their Statements of Financial Affairs and any exhibits and amendments thereto.

## ARTICLE XI
## RESOLUTION OF UNDETERMINED CLAIMS

11.1 <u>Objections</u>: Within ninety (90) days from the Effective Date, unless such date is extended by Order of the Court after notice and hearing, the Liquidating Trustee may file with the Court objections to Claims and interests and shall serve a copy of each such objection upon the Holder of the Claim or interest to which such objection pertains. Unless otherwise ordered by the Court, the Liquidating Trustee shall litigate to judgment, settle or withdraw objections to contested Claims.

11.2 <u>Effect of Bar Date</u>: In accordance with Federal Rule of Bankruptcy Procedure 3003(c), any Creditor whose claim was not scheduled, or holds a Contingent Claim, Unliquidated Claim, or Disputed claims, and did not filed a proof of claim before the Bar Date, shall not be treated as a Creditor with respect to such claim for purposes of voting or distribution.

11.3 <u>Estimation of Claims</u>: The Debtors or the Liquidating Trustee may at any time request that the Bankruptcy Court estimate any Contingent Claim, Unliquidated Claim or Disputed Claim pursuant to 11 U.S.C. § 502(c), regardless of whether the Debtors or the Liquidated Debtors previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any Contingent Claim, Unliquidated Claim, or Disputed Claim, the amount so estimated shall constitute either the allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtors or the Liquidating Trustee may pursue supplementary proceedings to object to the allowance of such Claim. All of the aforementioned objection, estimation and resolution procedures are intended to be cumulative and not exclusive of one another. Claims may be estimated subsequently and compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

11.4    Allowance of Claims:  At the time, and to the extent that an Undetermined Claim becomes an Allowed Claim, such Allowed Claim shall be entitled to such distributions as provided under the Plan.  Such distributions shall be made in the manner provided for by this Plan and the terms of any Final Order of the Court with respect to such Allowed Claim.  In the event that the Debtors make any distributions to Creditors at any time prior to a determination of allowance of an Undetermined Claim, payments on such Undetermined Claim will commence and be due and payable on the first quarterly payment date following the date of the Order allowing such Claim, and shall be re-amortized to equal an amount sufficient to fully pay the Allowed Claim.

11.5    Rights of Creditors:  Unless and until an Undetermined Claim becomes an Allowed Claim, no Creditor holding such a Claim shall have any Claim against the distribution held or reserved by the Debtors with respect to such Claim.

## ARTICLE XII
## GENERAL PROVISIONS

12.1    Certain Rights Unaffected:  Except as otherwise provided herein, any rights or obligations which the Debtors' Creditors may have among themselves as to their respective Claims or the relative priority or subordination thereof are unaffected by this Plan.

12.2    Headings:  The article and section headings used in this Plan are inserted for convenience and reference only and neither constitute a part of this Plan nor in any manner affect the terms, provisions or interpretations of this Plan.

12.3    Severability:  If any term or provision in this Plan is determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any other term or provision of this Plan.

12.4    Governing Law:  Except to the extent that the Bankruptcy Code is applicable, the rights and obligations arising under this Plan and any documents, agreements and instruments executed in connection with this Plan (except to the extent such documents, agreements and instruments designate otherwise) shall be governed by, and construed and enforced in accordance with, the laws of the State of Texas.

12.5    Successors and Assigns:  The rights and obligations of any entity named or referred to in this Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such entity.

12.6    Discharge of Claims:  Except as otherwise provided herein or in the Confirmation Order, the rights afforded in the Plan and the payments and distributions to be made hereunder shall discharge all existing debts and Claims of any kind, nature, or description whatsoever against the Debtors and the Liquidated Debtors or any of their assets or properties to the extent permitted by § 1141 of the Bankruptcy Code; upon the Effective Date, all existing Claims against the Debtors and the Liquidated Debtors shall be, and shall be deemed to be discharged; and all Holders of Claims shall be precluded from asserting against the Liquidated Debtors or

any of its assets or properties, any other or further Claim based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such Holder filed a proof of claim.

12.7    <u>Discharge of Debtors</u>:    Except as otherwise provided herein or in the Confirmation Order, any consideration distributed under the Plan shall be in exchange for and in complete satisfaction, discharge, and release of all Claims of any nature whatsoever against the Debtors or any of their assets or properties; and except as otherwise provided herein, upon the Effective Date, the Debtors shall be deemed discharged and released to the extent permitted by § 1141 of the Bankruptcy Code from any and all Claims, including but not limited to demands and liabilities that arose before the Effective Date, whether or not (a) a proof of claim based upon such debt is filed or deemed filed under § 501 of the Bankruptcy Code; (b) a Claim based upon such debt is allowed under § 502 of the Bankruptcy Code; or (c) the Holder of the Claim based upon such debt has accepted the Plan.    Except as provided herein, the Confirmation Order shall be a judicial determination of discharge of all liabilities of the Debtors.    Except as provided herein, pursuant to § 524 of the Bankruptcy Code, such discharge shall void any judgment against the Debtors at any time obtained to the extent it relates to a Claim discharged, and operates as an injunction against the prosecution of any action against the Debtors or the property of the Debtors, to the extent it relates to a Claim discharged.

12.8    <u>Exculpations</u>:  The Debtors' professionals shall not have or incur any liability to any Holder of a Claim for any act, event, or omission in connection with, or arising out of, the Confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for willful misconduct or gross negligence.

12.9    <u>Injunctive Relief</u>:  Except as provided herein, on and after the Confirmation Date, all Creditors and persons acting in concert with them are enjoined and restrained pursuant to § 105 of the Code from taking any action to correct or enforce any Claim directly or indirectly against the Liquidated Debtors in any manner inconsistent with the terms contained in the Plan. The discharge granted by this Plan voids any judgment at any time obtained with respect to any debt discharged.

**NOTWITHSTANDING ANYTHING CONTAINED HEREIN TO THE CONTRARY, NEITHER THE GUARANTORS, INSIDERS, OFFICERS, DIRECTORS, EMPLOYEES NOR THE INTEREST HOLDERS OF THE DEBTORS SHALL BE DISCHARGED AND RELEASED FROM LIABILITY, IF ANY, FOR CLAIMS AND DEBTS ARISING UNDER OR IN CONNECTION WITH THE DEBTORS OR THESE CHAPTER 11 CASES AND/OR OTHERWISE ADDRESSED AND/OR TREATED IN THIS PLAN. ABSENT FURTHER COURT ORDER UPON NOTICE AND HEARING, THE EXCLUSIVE REMEDY FOR PAYMENT FROM THE LIQUIDATED DEBTOR OF ANY CLAIM OR DEBT ADDRESSED IN THIS PLAN, SO LONG AS THE PLAN IS NOT IN DEFAULT, SHALL BE THE PLAN AND ALL PARTIES CLASSIFIED IN AND UNDER ARTICLES 4 AND 5 HEREIN ARE ENJOINED FROM TAKING ANY ACTION INCONSISTENT HEREWITH, INCLUDING, BUT NOT**

**LIMITED TO, ANY ACTION TO PROSECUTE OR COLLECT ANY DEBT OR CLAIM AGAINST THE LIQUIDATED DEBTORS AND/OR ANY PROPERTY OF THE LIQUIDATED DEBTORS.**

12.10   <u>Computation of Time</u>: In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

Dated: December 13, 2019

**Cinco Ranch Memory Care, LLC**

*/s/ Karen G. Nicolaou*
Karen G. Nicolaou, CRO

**Pearland Memory Care, LLC**

*/s/ Karen G. Nicolaou*
Karen G. Nicolaou, CRO

**CROWE & DUNLEVY, P.C.**

By: */s/ Christina W. Stephenson*
Vickie L. Driver
State Bar No. 24026886
Christina W. Stephenson
State Bar No. 24049535
Christopher M. Staine
State Bar No. 24104576
2525 McKinnon St., Suite 425
Dallas, TX 75201
Telephone: 214.420.2163
Facsimile: 214.736.1762
Email: vickie.driver@crowedunlevy.com
Email: christina.stephenson@crowedunlevy.com
Email: christopher.staine@crowedunlevy.com

**COUNSEL FOR DEBTOR**

**Schedule 1**
**List of Debtors**

| # | Debtor Name | Case No. | EIN |
|---|---|---|---|
| 1 | The LaSalle Group, Inc. | 19-31484 | 0143 |
| 2 | West Houston Memory Care, LLC | 19-31485 | 2760 |
| 3 | Cinco Ranch Memory Care, LLC | 19-31486 | 2716 |
| 4 | Pearland Memory Care, LLC | 19-31488 | 5311 |
| 5 | Riverstone Memory Care, LLC | 19-31493 | 5407 |